IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**OLUDARE OGUNDE,**

    **Plaintiff,**

v.                                                          Civil Action No. 3:23cv882

**UR M. JADDOU,**

    **and**

**FRANK C. REFFEL,**

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Ur M. Jaddou and Frank C. Reffel's (collectively, the "Defendants") Motion to Dismiss (the "Motion"). (ECF No. 6.)[1] Plaintiff Oludare Ogunde responded in opposition to the Motion, (ECF No. 11), and Defendants replied, (ECF No. 12).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant the Motion. (ECF No. 6.)

### I. Factual and Procedural Background[2]

Mr. Ogunde seeks the following relief: (1) that the Court review his Form N-400, Application for Naturalization (the "Application for Naturalization" or "Application"); and (2)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] In considering the Motion to Dismiss, (ECF No. 6), the Court will assume the well-pleaded factual allegations in the Petition for Judicial Review to be true and will view them in

that the Court reverse the United States Citizenship and Immigration Services' ("USCIS") denial of his Application. (ECF No. 1, at 1–2, 5.)

### A. Factual Allegations

Mr. Ogunde is a citizen of Nigeria. (ECF No. 1, at 1.) On November 2, 1995, Mr. Ogunde obtained permanent resident status in the United States through his spouse. (ECF No. 1 ¶ 1.)

#### 1. Mr. Ogunde's Aggravated Felony Convictions

On September 16, 1996, approximately ten months after obtaining permanent resident status, in Fairfax County, Virginia, Mr. Ogunde pled guilty to the following offenses: (1) Credit Card Theft (Virginia Code Section 18.2-192); (2) Credit Card Forgery (Virginia Code Section 18.2-193); (3) Fraudulent Use Credit Card (Virginia Code Section 18.2-195, 18.2-26); and (4) Forgery of a Public Record (Virginia Code Section 18.2-168). (ECF No. 1 ¶ 3.) On January 29, 1997, Mr. Ogunde was sentenced to five years of incarceration for these offenses. (ECF No. 1 ¶ 3.)

Earlier that month, on January 3, 1997, in Arlington County, Virginia, Mr. Ogunde was found guilty of the additional following offenses: (1) two counts of Attempted Grand Larceny (Virginia Code Section 18.2-95/18.2-26); (2) twelve counts of Credit Card Number Theft (Virginia Code Section 18.2-192); (3) two counts of Credit Card Fraud (Virginia Code Section 18.2-195); and (4) one count of Credit Card Forgery[3] (Virginia Code Section 18.2-193). (ECF No. 1 ¶ 4.) On January 16, 1997, Mr. Ogunde was sentenced to fifteen years of incarceration for these offenses. (ECF No. 1 ¶ 4.)

---

the light most favorable to Mr. Ogunde. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[3] This crime resulted in a loss of $12,749 for the credit card issuer. (ECF No. 1-2, at 5.)

In total, Mr. Ogunde was incarcerated for seventeen years, nine months, and fourteen days for these offenses. (ECF No. 1 ¶ 5.)

### 2. Mr. Ogunde's Files an Application for Naturalization

On May 14, 2014, an immigration judge removed the conditions on Mr. Ogunde's permanent resident status. (ECF No. 1 ¶ 1.) Approximately six years later, on July 17, 2020, Mr. Ogunde filed his Application for Naturalization. (ECF No 1 ¶ 2.)

On October 29, 2021, while Mr. Ogunde's Application remained pending, the Governor of Virginia issued a simple pardon for each of Mr. Ogunde's convictions. (ECF No. 1-2, at 6.)[4]

---

[4] "A simple pardon is a statement of official forgiveness. While it does not remove the conviction from the record, it often serves as a means for the petitioner to advance in employment, education, and self-esteem." (ECF No. 1 ¶ 7 (incorporating ECF No. 1-1); ECF No. 1-1, at 3; *see also* SECRETARY OF THE COMMONWEALTH, https://www.commonwealth.virginia.gov/judicial-system/pardons/ (last visited November 6, 2024).) Thus, Mr. Ogunde's simple pardon did not expunge his convictions, nor did it restore his Second Amendment firearm rights. (ECF No. 1-1, at 3; *see also* SECRETARY OF THE COMMONWEALTH, https://www.commonwealth.virginia.gov/judicial-system/pardons/ (last visited November 6, 2024) (explaining that "the Governor of Virginia does not restore the right to ship, transport, possess or receive firearms. These rights must be restored by a court"); Walter A. McFarlane, The Clemency Process in Virginia, 27 U. Rich. L. Rev. 241, 246 (1996) (explaining that a "[s]imple pardon[] . . . forgives the legal violation, but does not erase the individual's criminal record; nor does it restore his [or her] civil rights unless such relief is specifically given in the pardoning document."))

On May 22, 2024, Mr. Ogunde filed a Motion for Judicial Notice of the Executive Pardon Granted to Him by the Governor of Virginia in October 2021 (the "Motion for Judicial Notice"). (ECF No. 17.) In the Motion for Judicial Notice, Mr. Ogunde asks the Court to take judicial notice of his October 29, 2021 simple pardon. (ECF No. 17, at 1.) Because Mr. Ogunde references his October 29, 2021 simple pardon throughout his Petition for Judicial Review and it is referenced in his related exhibits, (ECF No. 1 ¶ 6; ECF No. 1-1, at 3; ECF No. 1-2, at 6), and because no party disputes its authenticity, the Court considers Mr. Ogunde's simple pardon on this Motion to Dismiss. *See Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."). As such, Mr. Ogunde's Motion for Judicial Notice is superfluous, and the Court will deem it moot.

3

At an unspecified time, Mr. Ogunde petitioned the Circuit Court of the City of Richmond to restore his firearms rights; on April 12, 2022, the court granted his petition. (ECF No. 1 ¶ 9.) Mr. Ogunde then submitted that ruling in support of his Application. (ECF No. 1 ¶ 9.)

### 3. USCIS Denies Mr. Ogunde's Application for Naturalization Due to His Felony Convictions

On March 2, 2022, USCIS denied Mr. Ogunde's Application for Naturalization, explaining that Mr. Ogunde's simple pardon failed to satisfy "'the definition of a full and unconditional pardon as understood by USCIS.'" (ECF No. 1 ¶ 7 (quoting ECF No. 1-1, at 3).) On April 3, 2022, Mr. Ogunde requested a hearing regarding this decision. (ECF No. 1-2, at 1.) Four months later, on August 2, 2022, Mr. Ogunde "appeared for a hearing to review the decision made on" his Application for Naturalization. (ECF No. 1-2, at 1.) On December 21, 2022, USCIS vacated its original denial of Mr. Ogunde's Application, "but continu[e]d to deny [it]" due to Mr. Ogunde's aggravated felony convictions. (ECF No. 1-2, at 1.)

### B. Procedural Background

On December 28, 2023, Mr. Ogunde filed a Petition for Judicial Review, asking this court to: (1) review his Application for Naturalization; and (2) that the Court reverse USCIS's denial of his Application. (ECF No. 1, at 1–2, 5.)

On March 11, 2024, Defendants filed their Motion to Dismiss. (ECF No. 6.) On April 30, 2024, after the Court granted a 29-day extension of time for Mr. Ogunde to do so, (*see* ECF No. 10, at 1), Mr. Ogunde timely responded, (ECF No. 11), and Defendants replied, (ECF No. 12). On May 17, 2024, Mr. Ogunde filed a sur-reply entitled Plaintiff's Response to the

Defendants' Reply to His Opposition to Their Motion to Dismiss (the "Sur-Reply"). (ECF No. 13.)[5]

For the reasons articulated below, the Court will grant Defendants' Motion to Dismiss. (ECF No. 6.)

## II. Standard of Review

### A.     Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arth ur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is

---

[5] On May 31, 2024, Defendants filed a Motion to Strike Sur-Reply (the "Motion to Strike"). (ECF No. 18.) Mr. Ogunde filed his Sur-Reply without seeking leave of Court, which is a violation of Eastern District of Virginia Local Rule 7(F)(1). Local Rule 7(F)(1) provides, in pertinent part:

> "All motions . . . shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. Unless otherwise directed by the Court, the opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service and the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief. . . . ***No further briefs or written communications may be filed without first obtaining leave of Court.***

E.D. Va. Loc. Civ. R. 7(F)(1) (emphasis added). Even if the Court were to consider Mr. Ogunde's Sur-Reply, however, it would not change the outcome. As a result, the Court will deny the Motion to Strike as moot.

5

entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III. Analysis

Mr. Ogunde's aggravated felony convictions bar him from establishing the requisite good moral character for his Application for Naturalization. Mr. Ogunde's simple pardon fails to remove this bar. Even if this simple pardon were to constitute a full and unconditional pardon—which it does not—Mr. Ogunde's Application would nevertheless be premature because he filed the Application in 2020, but did not receive his simple pardon until 2021. As a result, the Court

will grant Defendants' Motion to Dismiss. (ECF No. 6.) The Court will also deny Mr. Ogunde's Motion for Leave to Amend Petition for Judicial Review because his proposed amendment would be futile. (ECF No. 15.)

### A. Legal Standard: Review of USCIS Denial of Application for Naturalization

Pursuant to Title 8, United States Code, Section 1421, a person whose application for naturalization is denied, after a hearing before an immigration officer, may seek *de novo* "review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c); *Abuirshaid v. Johnson*, 155 F. Supp. 3d 611, 616 (E.D. Va. 2015).

When submitting a naturalization application, the applicant "bears the burden of demonstrating that . . . he or she has been and continues to be a person of good moral character." 8 C.F.R. § 316.10(a)(1); 8 U.S.C. § 1427(a) ("No person . . . shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character."). For the purposes of a naturalization application, a person cannot demonstrate good moral character when, *inter alia*, he or she has been "convicted of an aggravated felony . . . on or after November 29, 1990." 8 C.F.R. § 316.10(b)(1)(ii); 8 U.S.C. § 1101(f)(8); *see also Tung v. Johnson*, 159 F. Supp. 3d 677, 687 (E.D. Va. 2016) (observing that plaintiff's 1995 conviction for an aggravated felony constituted "an absolute bar to establishing the required 'good moral character,'" rendering him "ineligible for naturalization."). An aggravated felony constitutes, *inter alia*, (1) ""an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year," 8 U.S.C. § 1101(a)(43)(R), as well as (2) "an

offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," 8 U.S.C. § 1101(a)(43)(M)(i).

"The bar to showing good moral character need not be permanent" in some instances. *Sharma v. Taylor*, 50 F. Supp. 3d 749, 753 (E.D. Va. 2014). "[A]pplicants convicted of § 316.10(b)(1) crimes—murder and aggravated felonies—are no longer precluded from showing good moral character if they receive a pardon '*prior* to the beginning of the statutory period.'" *Id.* (quoting § 316.10(c)(2)(i) (emphasis in original).) The statutorily prescribed period is "either [the] three or five years" that "immediately preced[e] the filing of [the] application." *Id.* at 752–53; 8 U.S.C. § 1427(a)l; 8 U.S.C. § 1430(a).) The shorter, three-year period applies to applicants who "are living in marital union with a U.S. citizen spouse." *Sharma*, 50 F.Supp.3d at 752 (quotation marks omitted). Otherwise, the five-year period applies. *Id.*[6]

### B. Mr. Ogunde's Aggravated Felony Convictions Preclude Him from Establishing Good Moral Character

Mr. Ogunde has at least two aggravated felony convictions that post-date November 29, 1990, thereby preventing him from establishing good moral character. *See Tung*, 159 F. Supp. 3d. at 685 (explaining that an applicant's aggravated felony convictions that post-date November 29, 1990 statutorily preclude that applicant from establishing the requisite good moral character for naturalization).

---

[6] As articulated above, "[n]o person . . . shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a). A conviction of an aggravated felony on or after November 29, 1990, precludes an applicant from establishing good moral character. 8 U.S.C. § 1101(f)(8); 8 C.F.R. § 316.10(b)(1)(ii); *see also Tung*, 159 F. Supp. 3d at 687. Mr. Ogunde has at least two such convictions.

First, on September 16, 1996, he was found guilty of Forgery of a Public Record in violation of Virginia Code § 18.2-168. (ECF No. 1 ¶ 3.) The Immigration and Naturalization Act ("INA") at 8 U.S.C. § 1101(a)(43)(R) defines the term "aggravated felony" to mean, *inter alia*, "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R); *see also Alvarez v. Lynch*, 828 F.3d 288, 292 (4th Cir. 2016). As the United States Court of Appeals for the Fourth Circuit has concluded, Mr. Ogunde's conviction under Virginia Code § 18.2-168 for the forgery of a public record constitutes an aggravated felony. *See Alvarez*, 828 F.3d at 298 ("Virginia forgery as set forth in Virginia Code Ann. § 18.2-168 is categorically 'forgery' under the INA; therefore . . . Virginia public record forgery is an aggravated felony.")

Second, on January 16, 1997 in Arlington County, Virginia, Mr. Ogunde was convicted of Credit Card Forgery in violation of Va Code Ann. § 18.2-193. (ECF No. 1 ¶ 3.) Va Code Ann. § 18.2-193 provides in relevant part that "[a] person is guilty of credit card forgery when . . . he [or she], not being the cardholder or a person authorized . . . with intent to defraud . . . forges a sales draft . . . or use[d the] credit card number." Va Code Ann. § 18.2-193(1)(c). This crime resulted in a loss of $12,749 for the credit card issuer. (ECF No. 1-2, at 5.) Because the loss amount totals over $10,000, this constitutes an felony under the INA.[7] *See* 8 U.S.C. § 1101(a)(43)(M) (defining the term "aggravated felony" to mean, *inter alia*, "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.") Thus,

---

[7] Additionally, on September 16, 1996 in Fairfax County, Virginia, Mr. Ogunde pled guilty to Credit Card Forgery in violation of Va Code Ann. § 18.2-193 (the "First Credit Card Forgery Conviction"). (ECF No. 1 ¶ 3.) Because neither Mr. Ogunde's Petition for Judicial Review nor his exhibits establish whether the loss amount from this conviction also exceeds $10,000, the Court cannot discern whether this additional conviction for Credit Card Forgery constitutes a third aggravated felony conviction.

9

under 8 C.F.R. § 316.10(b)(1), Mr. Ogunde's aggravated felonies bar him from establishing the requisite good moral character necessary to file a successful Application for Naturalization. *See* 8 C.F.R. § 316.10(b)(1).

### C. Even if Mr. Ogunde's Simple Pardon Were to Constitute a Full and Unconditional Pardon, Mr. Ogunde's Application Would Nonetheless Be Premature and Could Not Be the Basis For a Revival of His Ability to Demonstrate Good Moral Character

In his Opposition, Mr. Ogunde asks the Court to deem his simple pardon as "full and unconditional" for the purposes of his Application. (ECF No. 11, at 10.) Mr. Ogunde's simple pardon is not, however, full and unconditional. As articulated above, "[a] simple pardon is a statement of official forgiveness. While it does not remove the conviction from the record, it often serves as a means for the petitioner to advance in employment, education, and self-esteem." (ECF No. 1 ¶ 7 (incorporating ECF No. 1-1); ECF No. 1-1, at 3; *see also* SECRETARY OF THE COMMONWEALTH, https://www.commonwealth.virginia.gov/judicial-system/pardons/ (last visited November 6, 2024). Mr. Ogunde's simple pardon did not expunge his convictions, nor did it restore his Second Amendment right to possess a firearm. (ECF No. 1-1, at 3; ECF No. 11-1, at 3; *see also* SECRETARY OF THE COMMONWEALTH, https://www.commonwealth.virginia.gov/judicial-system/pardons/ (last visited November 6, 2024) (explaining that "the Governor of Virginia does not restore the right to ship, transport, possess or receive firearms. These rights must be restored by a court.")) Thus, at no point in time can he use his simple pardon as a basis for reviving his ability to demonstrate good moral character. *See Sharma*, 50 F. Supp. 3d at 753.

In any event, even if the Court deemed Mr. Ogunde's simple pardon a full and unconditional pardon, which it does not, his Application would nonethetheless be premature. As explained above, applicants convicted of § 316.10(b)(1) crimes, which include Mr. Ogunde due

10

to his aggravated felony convictions, "are no longer precluded from showing good moral character if they receive a [full and unconditional executive] pardon '*prior* to the beginning of the statutory period.'" *Sharma*, 50 F. Supp. 3d at 753 (citing 8 C.F.R. § 316.10(c)(2)(i) (emphasis in original)). The statutorily prescribed period is "either three or five years" before the filing of the Application for Naturalization. *See Sharma*, 50 F.supp.3d at 752–53; 8 U.S.C. § 1427(a); 8 U.S.C. § 1430(a).) The three-year period applies to applicants who "are living in marital union with a U.S. citizen spouse." *Sharma*, 50 F.supp.3d at 752 (quotation marks omitted). Otherwise, the five-year period applies. *Id.*

Here, Mr. Ogunde filed his Application for Naturalization on July 17, 2020, well *before* he received his simple pardon. (ECF No 1 ¶ 2.) His Petition for Judicial Review notes that he "obtained permanent resident status through his spouse", but does not specify whether he is "liv[es] in marital union with a U.S. citizen spouse." *Sharma*, 50 F.Supp.3d at 752. Thus, his statutorily prescribed period began on either July 17, 2015, or July 17, 2017. *See id.* Mr. Ogunde's simple pardon is dated October 29, 2021. (ECF No. 1-2, at 6.) Thus, regardless of whether the three or five-year statutorily prescribed period applies to Mr. Ogunde, he did not receive it prior to either statutorily prescribed period. Because Mr. Ogunde filed his Application prior to receiving his simple pardon, and even if the simple pardon were to constitute a full and unconditional pardon, Mr. Ogunde filed his Application too early. As such, Mr. Ogunde cannot, now or in the future, "revive [his] ability to demonstrate good moral character" for the purposes of his premature July 17, 2020 Application. *Sharma*, 50 F. Supp. 3d at 753.[8]

---

[8] As articulated above, because Mr. Ogunde's simple pardon is not full and unconditional, at no point in time can he use his simple pardon in a subsequent Application for Naturalization as a basis for reviving his ability to demonstrate good moral character. *See Sharma*, 50 F. Supp. 3d at 753.

11

### D. The Court Will Deny Leave to Amend

On May 17, 2024, Mr. Ogunde filed a Motion for Leave to Amend Petition for Judicial Review (the "Motion to Amend"). (ECF No. 15.) To the Motion to Amend, Mr. Ogunde attached a proposed Amended Petition for Judicial Review. (ECF No. 15-1.)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a "district court may deny leave to amend for reasons 'such as . . . undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment[.]'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Here, like his original pleading, Mr. Ogunde's proposed Amended Petition for Judicial Review fails to state a plausible claim for relief. This proposed filing establishes the following critical facts: (1) on July 17, 2020, Mr. Ogunde filed his Application for Naturalization; (2) Mr. Ogunde was convicted of *at least* one aggravated felony after November 29, 1990; and (3) on October 29, 2021, well beyond either possible statutorily prescribed period, Mr. Ogunde received a simple pardon. (ECF No. 15-1, at ¶¶ 2–6.) For the reasons discussed in detail above, these facts preclude Mr. Ogunde from establishing the requisite good moral character in his July 17, 2020 Application for Naturalization. *See Sharma*, 50 F. Supp. 3d at 753. As a result, the Court will deny Mr. Ogunde's Motion for Leave to Amend as futile.[9]

---

[9] After he filed his Motion for Leave to Amend, on May 22, 2024, Mr. Ogunde filed a Motion to Declare 8 CFR § 316.10(b) and (c) Unconstitutional and Void (the "Motion to Declare"). (ECF No. 16.) This Motion seeks to add new claims for declaratory relief without

12

## IV. Conclusion

For the reasons articulated above, the Court will grant Defendants' Motion to Dismiss. (ECF No. 6.)

An appropriate Order shall issue.

Date: 11/13/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

requesting or obtaining leave of court, in violation of Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15(a)(1)–(2) (where more than twenty-one days have elapsed since the filing of a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave.") These claims for declaratory relief are not included in Mr. Ogunde's Motion for Leave to Amend. (*See generally*, ECF No. 15.) Thus, the Court will deny the Motion to Declare as procedurally improper. *See, e.g., Oden v. Wilson*, No. 3:17CV286 (RCY), 2018 WL 359478, at *2 (E.D. Va. Jan. 10, 2018) (citing *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs[.]" (internal citations omitted)).